UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LASANA RENNIE PHILBERT,

                       Petitioner,

     -against-

WILLIAM D. BROWN, Superintendent of Eastern
Correctional Facility,

                      Respondent.

-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**1:11-CV-1805 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Lasana Philbert brings this pro se Petition for Writ of Habeas Corpus, pursuant to 28

U.S.C. § 2254, attacking his state convictions in 2007 for Assault on a Police Officer and Assault

in the Second Degree. He asserts seven claims: (1) that there was a lack of probable cause for

his arrest; (2) that his identification in a lineup was unduly suggestive and that the in-court

identification ought to have been precluded; (3) that he is actually innocent; (4) that he received

ineffective assistance from his trial counsel because counsel (a) failed to call two alibi witnesses,

and (b) misled Philbert about whether he could testify on his own behalf; (5) that he received

ineffective assistance from his appellate counsel because counsel: (a) failed to raise the claim of

ineffective assistance of trial counsel, (b) failed to raise the prosecutor's failure to provide

exculpatory evidence in violation of <u>Brady</u>, (c) failed to raise a <u>Batson</u> claim based on an

exclusion of jurors by the prosecutor due to their race, and (d) failed to raise "any arguable issue"

in the appellate brief; (6) that his conviction was the result of prosecutorial misconduct in that the

prosecutor (a) knowingly allowed false testimony; and (b) failed to turn over exculpatory

evidence in violation of <u>Brady</u>; and (7) that he was denied his right to present a defense due to

trial counsel's failure to call available alibi witnesses.  For the reasons set forth below, Philbert's

Petition is DENIED.

I.   **BACKGROUND**

   A.   **Facts**

   On the morning of June 14, 2005, at approximately 7:45 A.M., Police Officer Christopher

Wiesneski, on patrol near the "Laurelton playground" in Queens, saw a man walking down a

path where Wiesneski had previously issued summonses and made arrests for drug crimes.  (Def.

App. Br. (Docket Entry # 11-1) at 3-4.)  Officer Wiesneski entered the park on his scooter and

approached the man—whom he later identified as Lasana Philbert—on foot.  (Id. at 4.)

Wiesneski observed that the man had his hands clenched in fists, and that he had a cigar in one

hand that appeared to be partially unraveled.  (Id.)  Believing that the man had marijuana in his

possession, Wieseski informed him that if he handed over the marijuana, Wiesneski would only

write him a summons.  (Id.)  The man complied.  (Id.)  From the time that Officer Wiesneski

initially approached the man to this point in their interaction, the two men were approximately

two feet apart, the sun was up, and approximately three to four minutes had elapsed.  (Id. at 4-5.)

Officer Wieneski was therefore able to get a "good look" at the man.  (Id. at 5.)

   After this initial exchange, Officer Wiesneski told the man to stand up, and, when the

man complied, Wiesneski observed what he believed to be the butt of a gun sticking out of the

man's front pants-pocket.  (Id.)  Officer Wiesneski pulled out and raised his own gun towards the

man.  (Id.)  The man then lunged at Officer Wiesneski, grabbed Wiesneski's gun, and attempted

to pull the weapon from Wiesneski's grasp.  (Id.)  The two struggled for approximately twenty

seconds before the gun discharged and a single bullet struck Officer Wiesneski in the leg.  (Id.)

Wiesneski fell to the ground, and the man fled the scene.  (Id.)

2

Officer Wiesneski radioed for assistance, and described the suspect as a black man in his early twenties, between 5'9" and 5'11" tall, 170 to 180 pounds, wearing blue jeans, a black t-shirt and a white "do-rag." (Id.) Wiesneski also told a detective that the suspect had a "bit" of facial hair, and may have said that the suspect had a "heavy" Jamaican accent. (Id. at 6.) The police brought a suspect matching at least part of this description to the hospital just before Officer Wiesneski underwent surgery, but Wiesneski did not identify the man as his assailant. (Id. at 6-7.)

Philbert was first detained and questioned about the shooting the night of June 14, 2005, but he was charged with an unrelated offense and released. (Pet'r Mem. (Docket Entry # 1) at 3.) Almost a month later, on July 11, 2005, Duane Martin, an individual arrested for an unrelated matter, told the police that Philbert told him that Philbert had assaulted Officer Wiesneski. (Resp. Mem. (Docket Entry # 12) at 2.) Detective Christopher Drew went to Philbert's home, and Philbert agreed to go to the police precinct to be interviewed. (Id.) Detective Drew initially identified himself as an "investigator from the Internal Affairs Bureau" who was investigating the circumstances surrounding Philbert's initial June 14, 2005 arrest. (Resp. Ex. A (Docket Entry # 11-1) at 2.)

At the station-house, Philbert was taken into custody. (Id. at 3.) He was then read his Miranda warnings and interviewed by detectives. (Id.) Philbert denied any involvement in the shooting, and he gave his alibi to the detectives—that he had been with a girlfriend the night before the shooting and did not return to the Cambria Heights neighborhood until after the assault. (Id.) Philbert was detained at the police precinct overnight and was placed in a lineup the following day. (Resp. Mem. at 2-3.) Officer Wiesneski viewed this lineup and identified Philbert as his assailant. (Id. at 3.)

**B.    Huntley, Wade, and Dunaway Hearing**

A Huntley, Wade, and Dunaway hearing was held on June 21, 2006, June 27, 2006, and July 25, 2006.[1] (Resp. Ex. A at 1.) After hearing testimony from Detective Drew, the hearing court concluded that there was no probable cause to arrest Philbert and hold him for nearly twenty-four hours prior to the lineup. (Id. at 7.) Accordingly, the lineup identification was suppressed. (Id.)

**C.    Independent Source Hearing**

Because of the suppression of the lineup identification, the state court held an independent source hearing on August 23, 2006 to determine whether there was an independent basis upon which Officer Wiesneski could identify Philbert. (Id.; Ind. Source Hearing Tr. at 2.) The court concluded that there was such a basis. (Ind. Source Hearing at 32.) It observed:

> The officer had several minutes of broad daylight focused only on this person who committed this crime, and his description matches the defendant. . . . I can't say that he is correct when he says it was this defendant, but he had independent opportunity to make the observations and an opportunity to recall them. That took place at the time of the lineup.

(Id.) Philbert's counsel raised no objections, and the court issued an order finding that Wiesneski had an independent source. (Id.; Resp. Ex. B (Docket Entry # 11-1).)

**D.    Trial Court Proceedings**

A Queens County Grand Jury charged Philbert with aggravated assault on a police officer or a peace officer, assault in the first degree, assault on a peace officer, police officer, fireman or emergency medical services professional, and assault in the second degree. (Resp. Mem. at 3.) Count two of the indictment, assault in the first degree, was dismissed prior to trial by application of the People. (Trial Tr. (Docket Entry # 11-4) at 4-5.)

---

[1] Philbert withdrew his Huntley claim at the hearing. (Resp. Ex. A at 4.)

4

Philbert's jury trial began January 17, 2007. (Id. at 1.)  At the outset of the trial, the state court granted a motion in-limine which sought to exclude two pictures obtained from Philbert's cell phone of Philbert holding what appeared to be a gun and an admission by Philbert that he was a marijuana user. (Id. at 6-10.)  The court also issued a Sandoval ruling, which would have allowed the prosecutor, had Philbert testified on his own behalf, to question him about his admitted daily marijuana use, his arrest for a violation, and an assault he allegedly committed while at Rikers Island. (Id. at 11-13.)

Officer Wiesneski, Officer Theodore Imbasciani, Detective Paul Brown, and Detective Drew testified for the prosecution. (Id. at 42 (Wiesneski); Id. (Docket Entry # 11-5) at 166 (Imbasciani); Id. at 197 (Brown); Id. at 227 (Drew).)  Philbert's trial counsel called a single witness, Hayden Thomas, to testify that Philbert had large tattoos on his arms at the time of Wiesneski's assault. (Id. at 235, 258.)  On January 27, 2007, the jury acquitted Philbert of aggravated assault on a police officer or a peace officer but convicted petitioner of assault on a peace officer, police officer, fireman or emergency medical services professional and assault in the second degree. (Id. at 372.)  On February 27, 2007, the court sentenced Philbert to concurrent sentences of twelve years for assault on a peace officer, police officer, fireman or emergency medical services professional and five years for assault in the second degree. (Sentence Tr. at 12.)

### E.  Direct Appeal

Philbert appealed his conviction to the New York Supreme Court, Appellate Division, Second Department on June 30, 2008. (Resp. Ex. C (Docket Entry # 11-1).)  Philbert was granted leave to appeal as a poor person and was represented by new counsel on appeal. (Id.)  Philbert argued (1) that he had been denied his right to a fair trial as a result of certain statements

5

made by the People in their summation (Id. at 16), and (2) that the twelve-year sentence was excessive given Philbert's age and status as a first-time offender (Id. at 27). On March 3, 2009, the Appellate Division affirmed petitioner's conviction and sentence summarily, stating (1) that the claim of prosecutorial misconduct was unpreserved, and that, alternatively, it was without merit, and (2) that the sentence imposed was not excessive. People v. Philbert, 63 A.D.3d 698, 699 (N.Y. App. Div. 2d Dep't 2009). Philbert was denied leave to appeal to the New York Court of Appeals on June 15, 2009. People v. Philbert, 12 N.Y.3d 919 (2009).

### F.    Motion to Vacate Judgment

Philbert filed a pro se motion to vacate his conviction under New York Criminal Procedure Law § 440.10 on March 20, 2010. (Resp. Ex. I (Docket Entry # 11-1) at 1.) Philbert alleged that his trial counsel was ineffective for: (1) failing to present two alibi witnesses, and (2) failing to call Philbert to testify. (Id. at 2.) Philbert claimed that his trial counsel told him that he did not call Maralin Springer, Philbert's girlfriend, to testify at trial because her testimony had not swayed the grand jury, and "jurors [are] skeptical of alibi witnesses." (Id. at 4.) He also claimed that his trial counsel said that he did not call Marcia Eversley, Springer's mother, because she was unable to confirm whether or not Philbert had tattoos when questioned prior to trial. (Id. at 10.) Philbert also alleged that his trial counsel did not inform him that he could take the stand in his own defense. (Id. at 6-7.) Although Philbert conceded that counsel advised him of the substantial risks of testifying on his own behalf after the Sandoval ruling, he maintained that he did not know that testifying was an option. (Id.) According to Philbert, he would have chosen to testify had he been aware of the opportunity. (Id.)

Philbert's motion was denied on June 14, 2010. (Resp. Ex. K (Docket Entry # 11-1) at 2.) The state court determined that, under both federal and state law, Philbert had not shown his

6

trial counsel to be ineffective. (Id. at 3-4.) According to the court, trial counsel's decision not to call the alibi witnesses and his advice against Philbert testifying on his own behalf could only be construed as trial strategy. (Id. at 3-4.) Philbert moved for reconsideration of his § 440.10 motion on July 13, 2010 (Resp. Ex. L (Docket Entry # 11-1)), and this motion was denied on August 26, 2010 (Resp. Ex. N (Docket Entry # 11-1)). Philbert's application for leave to appeal the denial of his § 440.10 motion was denied by the Supreme Court, Appellate Division, Second Department, on March 3, 2011. (Resp. Ex. Q (Docket Entry # 11-1).)

### G.     Petition for Writ of Habeas Corpus

On April 11, 2011, Philbert submitted the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Pet. (Docket Entry # 1) at 2.)[2] Respondent submitted a memorandum of law in opposition to the Petition (Resp. Mem.), and, in his Reply, Philbert withdrew five issues from his habeas petition (Pet'r Reply (Docket Entry # 17) at 3-4). The remaining claims are: (1) that there was a lack of probable cause for his arrest; (2) that the lineup identification was unduly suggestive, and that the in-court identification ought to have been precluded; (3) that he is actually innocent; (4) that he received ineffective assistance from his trial counsel because counsel (a) failed to call two alibi witnesses, and (b) misled Philbert about whether he could testify on his own behalf; (5) that he received ineffective assistance from his appellate counsel because counsel: (a) failed to raise the claim of ineffective assistance of trial counsel, (b) failed to raise the prosecutor's failure to provide exculpatory evidence in violation of Brady, (c) failed to raise a Batson claim based on an exclusion of jurors by the prosecutor due to their race, and (d) failed to raise "any arguable issue" in the appellate brief; (6) that his conviction was the result of prosecutorial misconduct in that the prosecutor (a) knowingly allowed false testimony; and (b) failed to turn over exculpatory evidence in violation

_____

[2] To avoid confusion, the court notes that the Petition's pagination begins with "2."

of Brady; and (7) that he was denied his right to present a defense due to trial counsel's failure to call available alibi witnesses. (Pet'r Mem. at 6-37.)

## II.   HABEAS CORPUS STANDARDS

Under 28 U.S.C. § 2254(a), a district court is empowered to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A person in custody pursuant to a judgment of a state court must generally meet three requirements to obtain habeas relief: (1) exhaustion; (2) lack of a procedural bar; and (3) satisfaction of the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).

### A.   Exhaustion

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). "The exhaustion requirement is not satisfied unless the federal claim has been fairly presented to the state courts," meaning that the petitioner "informed the state court of both the factual and the legal premises of the claim he asserts." Daye v. Att'y Gen. of State of N.Y., 696 F.2d 186, 191 (2d Cir. 1982) (en banc) (internal quotation marks omitted).

"A petitioner is not required to cite 'book and verse on the federal constitution' in order for a claim to be 'fairly presented.'" Allison v. Khahaifa, No. 10-CV-3453 (KAM), 2011 WL 3298876, at *6 (E.D.N.Y Aug. 1, 2011) (quoting Picard v. Connor, 404 U.S. 270, 275, 278 (1971)). "Instead, exhaustion may be satisfied where the legal basis of a claim made in state court is the 'substantial equivalent' of the habeas claim." Id. (quoting Picard, 404 U.S. at 278).

8

"This means, in essence, that in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." Daye, 696 F.2d at 192. Thus, even if a petitioner does not cite any federal constitutional provisions, he may fairly present his federal claim to the state court through:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like factual situations, (c) assertion of the claim in terms so particular as to call in mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Id. at 194.

Notably, *every* claim that a petitioner makes in his § 2254 application must first have been raised in state court in order for the petition to be considered exhausted. This "total exhaustion" rule requires that "a district court [ ] dismiss habeas petitions containing both unexhausted and exhausted claims." Rose v. Lundy, 455 U.S. 509, 513, 522 (1982). But there is an important exception to the total exhaustion rule—created by a 1996 amendment to AEDPA— whereby a district court may *deny* an *entire* habeas petition on the merits notwithstanding a petitioner's failure to exhaust some or all of his claims. See 28 U.S.C. § 2254(b)(2). In other words, a court may deny but not grant "mixed petitions." Caswell v. Racetti, No. 11-CV-0153 (MAT), 2012 WL 1029457, at *4 (W.D.N.Y. Mar. 26, 2012) (citing Turner v. Artuz, 262 F.3d 118, 122 (2d Cir. 2001)).

### B.     Procedural Bar

"It is well established that federal courts will not review questions of federal law presented in a habeas petition application when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." Cone v. Bell, 556 U.S. 449, 465 (2009) (internal quotation marks omitted). "[W]hen a petitioner fails

9

to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." [3]  Id.

"[T]he adequacy of state procedural bars to the assertion of federal questions is not within the State's prerogative finally to decide; rather, adequacy is itself a federal question." Id. (internal quotation marks and alteration omitted). Thus, courts "have an independent duty to scrutinize the application of state rules that bar [its] review of federal claims." Id. at 468.

The concepts of procedural bar and exhaustion often interact in an important way. If a § 2254 petitioner has failed to present a claim to a state court but *can no longer do so*—for example, if the time to file a state-court appeal has passed—then that claim is considered procedurally defaulted rather than unexhausted. See O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999) (holding that petitioner's "failure to present three of his federal habeas claims to the Illinois Supreme Court [ ] resulted in a procedural default of those claims"); Lloyd v. Walker, 771 F. Supp. 570, 574 (E.D.N.Y. 1991) (noting that "[w]hen a petitioner has not properly presented his claim to a state for consideration on the merits, but it is clear that the state court would hold the claim procedurally barred, . . . the exhaustion requirement is satisfied" but the petitioner is barred "from litigating the merits of th[at] claim[] in federal habeas proceedings").

**C.    AEDPA Deference**

Where a state court does reach the merits of a claim asserted in a § 2254 habeas petition, the state's decision is reviewed under the deferential standard set forth in AEDPA. AEDPA provides that:

---

[3] As an exception, a court may consider a procedurally barred claim on the merits if the prisoner demonstrates:  (1) "cause" for failing to comply with the state procedural rule; and (2) "prejudice" from the procedural bar. Wainwright v. Sykes, 433 U.S. 72, 92 (1977).

10

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. § 2254(d); see also Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." Howard v. Walker, 406 F.3d 114, 122 (2d Cir. 2005). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. The question is "not whether the state court was incorrect or erroneous in rejecting petitioner's claim, but whether it was objectively unreasonable in doing so." Ryan, 303 F.3d at 245 (internal quotation marks, alterations, and emphases omitted). The petition may be granted only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

## III. DISCUSSION

### A. Actual Innocence

Philbert raises a claim of actual innocence as a mechanism to render his procedurally

11

defaulted claims reviewable.[4] (Pet'r Mem. at 17-19.) Procedurally defaulted claims may not be litigated on the merits in a petition for habeas corpus unless the petitioner (1) shows "cause for the procedural default and prejudice resulting therefrom," or (2) demonstrates that failing to consider the claim would "result in a fundamental miscarriage of justice." Lloyd, 771 F. Supp. at 574 (internal quotation marks omitted). The Supreme Court has held that a claim of actual innocence may bring the petitioner into the "narrow class of cases . . . implicating a fundamental miscarriage of justice." Schlup v. Delo, 513 U.S. 298, 315 (1995). Actual innocence claims must be supported by "new reliable evidence . . . that was not presented at trial." Doe v. Menefee, 391 F.3d 147, 161 (2d Cir. 2004). A successful actual innocence claim must lead the court to conclude "that, in light of all the evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Menefee, 391 F.3d at 166. Philbert, has not been met this burden, and his procedurally defaulted claims will therefore not be reviewed on their merits.

Though Philbert has not offered any new evidence in his Petition, the court will consider the affidavits submitted with his state-court motion to vacate his judgment. Cf. Graham, 89 F.3d at 79 (noting that a pro se complaint "must be read liberally and should be interpreted to raise the strongest arguments that they suggest" (internal quotation marks omitted)). In her affidavit, Marcia Eversley, the mother of Philbert's girlfriend, states that she saw Philbert the night prior to Officer Wiesneski's assault, and that, because she never heard her door alarm that night and her daughter said "*we're* not ready" the next morning, she believed that Philbert spent the night and

---

[4] Philbert also appears to state a claim of "freestanding actual innocence." (Pet'r Mem. at 18.) This claim is unexhausted, as it was not fairly presented to the state courts. Though Philbert did state "I am innocent" in his § 440.10 motion (Resp. Ex. I at 8), this bare statement is insufficient because it fails to "inform[] the state court of both the factual and the legal premises" of his actual innocence claim, Daye, 696 F.2d at 191. Moreover, "[f]ollowing the strictures of the Second Circuit and the majority of courts in the Circuit, this Court assumes that a freestanding actual innocence claim does not constitute a cognizable ground for habeas relief." Cole v. Walsh, No. 05-CV-736 (SLT)(SMG), 2009 WL 3124771, at *5 (E.D.N.Y. Sept. 29, 2009). The court will not, therefore, consider Philbert's freestanding claim.

did not leave until after 7:35 A.M. the morning of the assault. (Eversley Aff. (Resp. Ex. I.) (Docket Entry # 11-1) at 1.)  Maralin Springer, Philbert's girlfriend, stated in her affidavit that Philbert spent the night with her and boarded a bus at Merrick Boulevard and 109th Avenue sometime around 8 A.M. the morning of Officer Wiesneski's assault. (Springer Aff. (Resp. Ex. I.) (Docket Entry # 11-1) at 1.) Springer's sworn affidavit therefore places Philbert with her at the time of Officer Weineski's assault. (See Resp. Mem. at 2 (noting that the incident took place at approximately 7:45 A.M).)

The court must determine whether new evidence is trustworthy based both on its own merits and in light of other evidence in the record. Menefee, 391 F.3d at 161.  The identity of the affiants is highly relevant to this inquiry—a reasonable juror would likely question the credibility of the affidavits, as they were provided by Philbert's girlfriend and his girlfriend's mother. See Lawrence v. Greene, No. 06-CV-0202 (DLI), 2011 WL 1327128, at *7 (E.D.N.Y. March 31, 2011).  Moreover, Eversley's affidavit states only a belief, as opposed to actual knowledge, that Philbert had not left her home prior to 7:35 A.M. (Eversley Aff. at 1.)  In light of this, and the testimony of Officer Wiesneski identifying Philbert as his assailant, the court does not find that "no reasonable juror would have found petitioner guilty beyond a reasonable doubt." For this reason, Philbert is unable to overcome his procedural default based on his claim of actual innocence.

**B.      Probable Cause, Wade, and Independent Source Hearing**

Philbert's first two claims—that the police lacked probable cause for his arrest and that his lineup identification was unduly suggestive—are more appropriately construed as a single challenge to Officer Wiesneski's in-court identification. See Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (noting that a pro se complaint "must be read liberally and should be

13

interpreted to raise the strongest arguments that they suggest" (internal quotation marks

omitted)). This is because Philbert's complaints surrounding the lineup identification are moot:[5]

he was granted relief when the lineup identification was suppressed. (Resp. Ex. A at 7.) Thus,

the court construes these claims as a challenge to the result of the independent source hearing—

that the state court violated Philbert's right to due process in concluding that Wiesneski had an

independent basis for an in-court identification. See United States v. Kwong, 69 F.3d 663, 666

(2d Cir. 1995) (outlining the standard to determine "whether an in-court identification is

constitutionally permissible").

 However, this claim is procedurally defaulted, as Philbert did not fairly present it to the

state courts, and he can no longer return to state court to do so. Philbert cannot now return to

state court to exhaust this claim because its consideration is precluded from both direct and

collateral review. See N.Y. Crim. Proc. Law § 470.05; N.Y. Crim. Proc. Law § 440.10(2)(c).

Because Philbert has failed to state any cause for this procedural default, and his claim of actual

innocence has been rejected, the court will not consider the merits of his independent source

claim.

## C.   Prosecutorial Misconduct and Brady Violations

 Philbert also claims that the prosecutor "knowingly allowed" Officer Wiesneski to give

perjured testimony and "suppress[ed]" an Internal Affairs investigation, a report by the "shooting

team," ballistics and forensics reports, and "every other material evidence." (Pet'r Mem. at

34-35.)

 If proven, such misconduct would implicate Philbert's due process rights. Brady v.

---

[5] The court also notes that Fourth Amendment claims do not provide grounds for habeas relief "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim." Stone v. Powell, 428 U.S. 465, 494 (1976). Philbert had such an opportunity in his pretrial Wade and Dunaway hearing, and he has not shown any "unconscionable breakdown in the underlying process," Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992). Thus, his Fourth Amendment claim could not support his petition even if it were not moot.

Maryland, 373 U.S. 83, 87 (1963). "Whether the introduction of perjured testimony requires a new trial depends on the materiality of the perjury to the jury's verdict and the extent to which the prosecution was aware of the perjury." United States v. Wallach, 935 F.2d 445, 456 (2d Cir. 1991). "[S]uppression by the prosecutor of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87.

Philbert has failed to adequately support these unexhausted claims, and they therefore fail on their merits. Philbert has not "fairly presented" any of these claims to the state courts—neither in his direct appeal nor in his motion to vacate judgment—and they are either unexhausted or procedurally defaulted. Typically, prosecutorial misconduct claims would rest on facts outside the record. As such, this type of claim would be "more appropriate for collateral or post-conviction attack, which can develop the necessary evidentiary record." Cf. Sweet, 353 F.3d at 139 (noting the same with respect to "some ineffective assistance claims"). Philbert has not provided any additional evidence upon which to ground his allegations; rather, he has made conclusory statements regarding the alleged misconduct. This lack of outside-of-the-record evidence would tend to indicate procedural default, as the record-based claims could have been brought in a direct appeal. See id. at 139-40; Lou, 95 A.D.3d at 1035-36. Nevertheless, construing these pro se allegations in the light most favorable to Philbert, the court will assume the claims are merely unexhausted, and will reach the merits of the prosecutorial misconduct claims.

Firstly, Philbert alleges that the prosecutor "knowingly allowed" perjured testimony; however, this allegation is "vague, conclusory, and unsupported." Skeete v. New York, No. 03-CV-2903, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003). Though reversal is "virtually

automatic" if it is established that the prosecution "knowingly permitted the introduction of false testimony," Wallach, 935 F.2d at 456, Philbert offers neither any description of the testimony he alleges was false, nor any support for his claim that the Queens Assistant District Attorney had knowledge of the alleged perjury. Such "vague allegation[s]" which "fail to offer even the most cursory description of the[] alleged errors" do not amount to a viable habeas claim, Skeete, 2003 WL 22709079, at *2, nor do they establish knowing introduction of perjury by the prosecution. Philbert's claim for habeas relief based on alleged allowance of perjured testimony therefore fails.

Philbert also alleges that the prosecutor failed to disclose reports regarding an Internal Affairs investigation and forensic and ballistic analysis of Officer Wiesneski's weapon; however, these claims are similarly conclusory and unsupported. Materiality of suppressed evidence is determined by assessing whether, had the evidence been disclosed, there is a reasonable probability that the result of the proceeding would have been different. Kennaugh v. Miller, 289 F.3d 36, 48 (2d Cir. 2002). There are three essential elements to a successful Brady claim: (1) the evidence at issue must be favorable to the accused, (2) the evidence must have been suppressed by the prosecution, and (3) prejudice to the accused must have resulted. Douglas, 525 F.3d at 244-45 (quoting Strickler v. Greene, 527 U.S. 263, 281-82 (1999)).

Philbert alleges that an investigation completed by Internal Affairs was not turned over. (Pet'r Mem. at 35.) Although it is not clear, the court concludes that Philbert is referring to a possible investigation into his arrest—and the "round[] up" of all the "young African American males" in his neighborhood—on the night of Officer Wiesneski's assault. (Pet'r Mem. at 3; see also Resp. Ex. A at 2 (noting that the investigating detective identified himself to Philbert, prior to his illegal arrest and lineup, as an "investigator from the Internal Affairs Bureau investigating

16

arrests that took place on [the day of Officer Wiesneski's assault]").) Next, Philbert alleges that reports from a "shooting team" and the "forensic and balistic [sic] analysis of [Officer Wiesneski's] weapon" were not disclosed. (Pet'r Mem. at 35.) However, even taking these allegations as true, Philbert has failed to allege either that (1) the evidence at issue was favorable to his case, or (2) prejudice to his case resulted from the suppression. Therefore, Philbert has not demonstrated that this evidence was material to his guilt or punishment, and his <u>Brady</u> claim fails on its merits.

### D. Ineffective Assistance of Counsel

Philbert argues next that his trial counsel provided him with ineffective assistance, in violation of the Sixth Amendment as applied to the states through the Fourteenth Amendment.[6] (Pet'r Mem. at 35; Resp. Ex. I at 7.) The motion court, rejected this claim because the "failure of counsel to call the defendant's alibi witness and to advise the defendant not to testify at trial can only be viewed as trial strategy." (Resp. Ex. K at 3.) This conclusion was not contrary to, nor an unreasonable application of, clearly established federal law.

Ineffective assistance of counsel claims are governed by the Supreme Court's holding in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>See</u> <u>Williams</u>, 529 U.S. at 390. In <u>Strickland</u>, the Court established a two-prong test to determine whether a defendant's Sixth Amendment right to effective assistance of counsel has been violated.

---

[6] Philbert raises this twice in his Petition. In addition to claiming inadequate assistance of counsel, Philbert also claims his "right to present evidence and to have a defense" under the Sixth and Fourteenth amendments was abridged. (Pet'r Mem. at 29.) While the right to present a meaningful and complete defense is cognizable under the Sixth and Fourteenth Amendments independent of a claim of ineffective assistance of counsel, <u>see, e.g.</u>, <u>Wade v. Mantello</u>, 333 F.3d 51, 57 (2d Cir. 2003), Philbert has failed to state such a claim. Rather, instead of basing his claim on a deprivation of his Sixth Amendment right caused by the *state*, <u>id.</u>, Philbert's "right to present evidence" claim rests on factual grounds identical to those in his ineffective assistance of counsel claim, (<u>compare</u> Pet'r Mem. at 30, <u>with</u> Pet'r Mem. at 35, <u>and</u> Resp. Ex. I at 7.) The court will therefore consider these two sections of the petition to be a single claim of ineffective assistance of counsel.

First, under <u>Strickland</u>'s "performance" prong, a petitioner must show that trial counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms." <u>Strickland</u>, 466 U.S. at 687-88. "Constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" <u>Greiner v. Wells</u>, 417 F.3d 305, 319 (2d Cir. 2005) (quoting <u>Strickland</u>, 466 U.S. at 690). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689. Thus, a court must "not normally fault counsel for foregoing a potentially fruitful course of conduct if that choice also entails a significant potential downside," or if the lawyer otherwise had "a reasonable justification for the decision." <u>Greiner</u>, 417 F.3d at 319 (internal quotation marks omitted).

Second, under <u>Strickland</u>'s "prejudice" prong, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding"; rather, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 693-94.

Establishing a claim for ineffective assistance of counsel is a "heavy burden" that, in the context of a § 2254 petition, is "enhanced by the added hurdle posed by the highly deferential review accorded state court adjudications under [AEDPA]" where the state court has reached the merits of the claim. <u>Eze v. Senkowski</u>, 321 F.3d 110, 112 (2d Cir. 2003); <u>see also</u> <u>Harrington</u>, 131 S. Ct. at 788 ("The standards created by <u>Strickland</u> and § 2254(d) are both highly

18

deferential, and when the two apply in tandem, review is doubly so." (internal quotation marks and citation omitted)). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly"; instead, the petitioner must show that the state court "applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002) (citation omitted). "And, because Strickland's is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 112 (2009).

Philbert asserts two grounds for ineffective assistance:  that trial counsel (1) failed to call two alibi witnesses, and (2) misled Philbert about whether he could testify on his own behalf. (Resp. Ex. I at 7.) The court will address these arguments in turn.

### 1.    Failure to Call Alibi Witnesses

Philbert argues that trial counsel provided ineffective assistance by failing to call Marcia Eversley and Maralin Springer, the two alibi witnesses, to testify at his trial. (Id.) In his motion to vacate his conviction, Philbert argued that these witnesses would have "given the jury some doubt" of Officer Wiesneski's identification of Philbert as his assailant. (Id.) Even if this were true, it was not an unreasonable application of Strickland for the state court to conclude that trial counsel's decision not to call the witnesses was not deficient performance.

"The decision not to call a particular witness is typically a question of trial strategy, and courts have been especially hesitant to disturb such 'strategic' decisions." McCollough v. Bennett, No. 02-CV-5230, 2010 WL 114253, at *11 (E.D.N.Y. Jan. 12, 2010) (citing Pavel v. Hollins, 261 F.3d 210, 217 (2d Cir. 2001). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and

19

strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690-91. Eversley stated in her affidavit that she was interviewed by Philbert's attorney twice: once prior to the grand jury, and again just before trial. (Eversley Aff. at 2.) While Springer does not state whether she was ever interviewed by counsel, she did testify at the grand jury (Springer Aff. at 2), and Philbert stated that his counsel decided not to call her at trial because her grand jury testimony had not been persuasive (Resp. Ex. I at 5).

Philbert's trial counsel thus undertook an investigation of the alibi witnesses and made the strategic decision not to call them. He apparently did not believe that Spinger's testimony was persuasive, and was no doubt aware that the jury might not fully credit the defendant's girlfriend. Counsel was also wary of calling Eversley because she apparently did not realize Philbert had tattoos when she saw him the night before Wiesneski's assault. (Eversley Aff. at 2.) Calling her as a witness therefore could have undermined one of counsel's strategies to impeach the credibility of Wiesneski's identification. (Trial Tr. (Docket Entry # 11-4) at 139.) The state court's decision not to second-guess this course of action was not an unreasonable application of Strickland.

> 2.    Philbert's Decision not to Testify

Next, Philbert argues that trial counsel never advised him that it was ultimately his choice whether he would testify on his own behalf. (Resp. Ex. I at 6.) Philbert claims that, despite counsel's warning of the risks of testifying, he would have chosen to testify had he known it was his, and not his lawyer's, decision. (Id.) Assuming that this is true, and also assuming that it would be unreasonable for counsel to fail to inform Philbert of his right, the court nonetheless finds that Philbert was not prejudiced by this advice from counsel.

Philbert must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. However, in light of the trial court's Sandoval ruling, which would have allowed the People to question Philbert about his admitted daily marijuana use, and to inquire as to whether he was arrested for a violation, and to ask him about an assault he allegedly committed while at Rikers Island (Trial Tr. at 11-13), it is unlikely that Philbert's testimony would have positively affected his trial. The jury would have been faced with the decision of whether to believe Philbert or Wiesneski, and the People's cross-examination of Philbert would likely have undermined Philbert's credibility. Therefore, there is no reasonable probability that the outcome of Philbert's trial would have been different had he testified.

In sum, the court finds that the actions Philbert faults his trial counsel for taking were either within the wide range of professionally reasonable conduct, or caused no prejudice to Philbert, and counsel was not ineffective whether the court looks at these actions individually or cumulatively. Cf. Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001) (considering errors made by trial counsel "in the aggregate"). At the very least, the state court's rejection of Philbert's ineffective assistance claims was not an unreasonable application of Strickland. See 28 U.S.C. 2254(d)(1).

### E.  Ineffective Assistance of Appellate Counsel

Finally, Philbert argues that his appellate counsel provided him with ineffective assistance, in violation of the Sixth Amendment as applied to the states through the Fourteenth Amendment. This claim is unexhausted; Philbert has not brought a petition for writ of error coram nobis—the appropriate procedural mechanism to bring a claim for ineffective assistance

21

of appellate counsel in New York. <u>See</u> <u>People v. Bachert</u>, 69 N.Y.2d 593, 600 (N.Y. 1987). However, Philbert's claim of ineffective assistance of appellate counsel fails on its merits.

As is the case for a claim of ineffective assistance of trial counsel, to succeed on a claim of ineffective assistance of appellate counsel, Philbert must satisfy <u>Strickland</u>'s two-prong performance and prejudice standard. <u>See</u> <u>Forbes v. United States</u>, 574 F.3d 101, 106 (2d Cir. 2009). Philbert asserts four grounds for ineffective assistance: that appellate counsel (1) failed to raise the claim of ineffective assistance of trial counsel, (2) failed to raise the prosecutor's failure to provide exculpatory evidence in violation of <u>Brady</u>, (3) failed to raise a <u>Batson</u> claim based on an exclusion of jurors by the prosecutor due to their race, and (4) failed to raise "any arguable issue" in the appellate brief. (Pet'r Mem. at 32-33.) The court will address these arguments in turn.

### 1.    Ineffective Assistance of Trial Counsel

Philbert first argues that his appellate counsel was ineffective in failing to raise the issue of his trial counsel's ineffective assistance. However, this omission did not prejudice Philbert, as his ineffective assistance of trial counsel was not waived, and he was allowed to pursue his claim in the § 440.10 proceeding. Moreover, as discussed above, it appears that the claim was without merit, and, at the very least, the state court was not unreasonable in concluding, in the § 440.10 proceeding, that trial counsel's performance was not deficient.

### 2.    Prosecutor's Alleged *Brady* Violation

Philbert next argues that appellate counsel was ineffective in failing to raise a <u>Brady</u> claim due to the prosecutor's alleged non-disclosure of "exculpatory materials." (Pet'r Mem. at 32.) The court will assume that Philbert is referring to the same materials he claimed were suppressed in his stand-alone <u>Brady</u> claim. (<u>See</u> Pet'r Mem. at 34-35.) However, as discussed

22

above, Philbert has not demonstrated the materiality of any allegedly undisclosed documents.  It is therefore clear that any <u>Brady</u> claim raised by appellate counsel would have had no reasonable probability of changing the outcome of Philbert's appeal:  the <u>Brady</u> claim would have been denied for the same reasons it was denied here, and Philbert has therefore suffered no prejudice by its omission.

### 3.    Exclusion of Jurors in Violation of *Batson*

Philbert also argues that appellate counsel was ineffective for failing to raise a <u>Batson</u> claim based on the prosecutor's alleged exclusion from the jury—through the improper use of peremptory strikes—of Americans of Caribbean and African descent.  (Pet'r Mem. at 32, 26-29.) However, there is no record of any <u>Batson</u> objection to the prosecutor's use of peremptory strikes during, or after, jury selection in Philbert's case.  A <u>Batson</u> challenge must be raised prior to the conclusion of jury selection, or the objection will be deemed to have been waived. [7]  <u>McCrory v. Henderson</u>, 82 F.3d 1243, 1249 (2d Cir. 1996).  Furthermore, a <u>Batson</u> claim on direct appeal would have been rejected in accordance with New York's contemporaneous objection rule. Appellate counsel was therefore not unreasonable in failing to raise the claim.

### 4.    No "Arguable Issue" in Appellate Brief

Finally, Philbert argues that his appellate counsel provided ineffective assistance because he failed to "raise any arguable issue" in the appellate brief.  (Pet'r Mem. at 32.)  Appellate counsel did raise two issues: (1) that Philbert was denied a fair trial due to improper statements made by the prosecutor in summation, and (2) that the sentence imposed was excessive.  (Resp.

---

[7] There is good reason why failure to object gives rise to waiver of the objection:  raising the objection during jury selection allows the trial court to remedy the error without requiring a new trial, <u>McCrory</u>, 82 F.3d at 1247; the reasons for using a peremptory strike are often highly subjective, and elucidating the reasoning behind them may not be possible if not challenged promptly, <u>id.</u> at 1248; moreover, the trial judge is tasked with determining whether the prosecutor has acted with purposeful discrimination, and this determination relies upon the judge's contemporaneous observations, <u>id.</u>

Ex. C at 16, 27.) Philbert's argument that appellate counsel's decision to raise these issues, as opposed to those which he advocates, amounted to ineffective assistance lacks merit.

"Appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith, 528 U.S. at 288. "[A] petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). Though Philbert's appeal was unsuccessful, he has not explained why the arguments raised on appeal were "clearly and significantly" weaker than the arguments he now asserts. Nor could he. As discussed above, Philbert's arguments either lacked merit or were waived prior to his appeal. See Vargas v. U.S., 819 F. Supp. 2d 366, 383 (S.D.N.Y. 2011).

## IV.  CONCLUSION

For the reasons set forth above, Philbert's Petition for Writ of Habeas Corpus is DENIED. Because Philbert has not made a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue. See 28 U.S.C. § 2253(c). The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
October  5 , 2012

NICHOLAS G. GARAUFIS
United States District Judge

24